# EXHIBIT 6

1  KEMNITZER, BARRON & KRIEG, LLP
   BRYAN KEMNITZER        Bar No. 066401
2  KRISTIN KEMNITZER      Bar No. 278946
   445 Bush St., 6th Floor
3  San Francisco, CA 94108
   Telephone: (415) 632-1900
4  Facsimile: (415) 632-1901

5  HOUSING AND ECONOMIC RIGHTS ADVOCATES
   JOSEPH JARAMILLO       Bar No. 178566
6  PO Box 29435
   Oakland, CA 94604-9435
7  Telephone: (510) 271-8443
   Facsimile: (510) 868-4521

8
   Attorneys for Plaintiff Arturo Madriz and the proposed class
9

10

11

12          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

13              IN AND FOR THE COUNTY OF LOS ANGELES

14
   ARTURO MADRIZ, individually and on       Case No. BC723006
15 behalf of all others similarly situated,
                                            CLASS ACTION
16              Plaintiffs,
                                            FIRST AMENDED COMPLAINT FOR
17      vs.                                 DAMAGES, RESTITUTION,
                                            INJUNCTIVE AND DECLARATORY
18 GREENSKY OF GEORGIA, LLC; THE            RELIEF, FOR:
   BRAND BANKING COMPANY;
19 SYNOVUS BANK; and DOES 1 through 50,     (1) THE HOME SOLICITATION SALES
   inclusive,                                   ACT, CIVIL CODE §1689.5, ET SEQ.;
20                                          (2) THE CALIFORNIA TRANSLATION
                Defendants.                     ACT, CIVIL CODE §1632;
21                                          (3) VIOLATIONS OF THE ROSENTHAL
                                                FAIR DEBT COLLECTION
22                                              PRACTICES ACT, CIVIL CODE
                                                §1788, ET SEQ.; AND
23                                          (4) BUSINESS & PROFESSIONS CODE
                                                §17200, ET SEQ.
24
                                            Unlimited Civil Case
25
                                            JURY TRIAL DEMANDED
26
                                            Assigned for all purposes to Hon. David
27 _____/       Sotelo – Dept. 40

28        Plaintiff ARTURO MADRIZ ("Plaintiff"), individually and on behalf of all others

                                          1

1   similarly situated, hereby complains against Defendants GREENSKY OF GEORGIA, LLC

2   ("GREENSKY"); THE BRAND BANKING COMPANY ("BRAND"); SYNOVUS BANK

3   ("SYNOVUS") (collectively "Defendants"), and DOES 1 through 50, inclusive, and on

4   information and belief alleges as follows:

5                              **PRELIMINARY STATEMENT**

6   1.      GREENSKY, BRAND, and SYNOVUS are engaged in a scheme to fund the installation

7   of solar panels to low-income and non-native English speakers in California by accepting

8   assignment of loans to fund home improvements. GREENSKY then assigns these loans to

9   financial institutions, such as BRAND and SYNOVUS. Plaintiff brings this class action on

10  behalf of himself and the putative class pursuant to the California Home Solicitation Sales Act,

11  Cal. Civ. Code §1689.5, *et seq.* (the "Home Solicitation Sales Act"); the California Contract

12  Translation Act, Cal. Civ. Code §1632 (the "Contract Translation Act"); violations of the

13  Rosenthal Fair Debt Collection Practices Act, Civil Code §1788 *et seq.* (the "Rosenthal Act");

14  and for Declaratory Relief. GREENSKY, BRAND, and SYNOVUS are liable under the Federal

15  Trade Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq.*

16  2.      Plaintiff brings this case on behalf of himself and all others similarly situated pursuant to

17  Cal. Bus. & Prof. Code §17200, *et seq.* (the "UCL") in order to remedy the unlawful, unfair, and

18  fraudulent practices of Defendants. In addition, pursuant to Business and Professions Code

19  §17203, Plaintiff seeks an injunction as follows:

20              a)  Defendants shall not, directly or indirectly, finance goods and/or services based

21                  upon home solicitation contracts without notice of cancellation rights in the

22                  language in which the contract was negotiated, as required by the Home

23                  Solicitation Sales Act § 1689.7(a)(4);

24              b)  Defendants shall not, directly or indirectly, finance goods and/or services which

25                  are conducted in a language protected by Civil Code §1632(b) and that fail to

26                  provide a translation of the contract to the consumer in the language in which the

27                  contract was negotiated.

28  3.      GREENSKY arranges financing based upon form contracts that fail to provide

1  consumers with statutorily mandated cancellation notices and other disclosures in violation of the

2  Home Solicitation Sales Act. In addition, GREENSKY finances goods and/or services without

3  providing contracts to the consumers in the languages in which they negotiated the contracts in

4  violation of the Contract Translation Act.

5  4.      In order to halt and remedy Defendants' unlawful, unfair, and deceptive practices,

6  Plaintiff seeks appropriate relief for himself and the putative class including damages, restitution,

7  and injunctive relief, on behalf of all affected California consumers, as well as attorneys' fees

8  and costs.

9  **PARTIES**

10  5.      Plaintiff is an individual over 18 years of age. At all times relevant herein, Plaintiff was,

11  and currently is, a resident of the State of California and the County of Madera.

12  6.      GREENSKY is a Georgia corporation, which is, and at all times relevant herein was, a

13  corporation that was authorized to and did conduct business in the State of California, including

14  the County of Los Angeles. GREENSKY is a first-party service provider delivering loan

15  servicing and back-office business processing services to, and performing tasks at the direction

16  of financial institutions to whom loans are assigned.

17  7.      BRAND is a Georgia corporation, which is, and at all times relevant herein was, a

18  corporation that was authorized to and did conduct business in the State of California, including

19  the County of Los Angeles. BRAND is a financial institution that, at some portion of the time

20  relevant hereto, accepted assignment of MADRIZ's loan, and the loans of putative class

21  members. All claims and defenses that Plaintiff and the putative class have against GREENSKY

22  arising out of the solar panel purchase transaction are also valid against BRAND, pursuant to the

23  terms of the purchase contract. Given the violations of law alleged below, and the Federal Trade

24  Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq.*, which subjects the holder of a

25  consumer credit contract to all claims and defenses of the consumer against the seller, BRAND is

26  subject to all claims and defenses of Plaintiff against GREENSKY.

27  8.      SYNOVUS is a Georgia corporation, which is, and at all times relevant herein was, a

28  corporation that was authorized to and did conduct business in the State of California, including

the County of Los Angeles. SYNOVUS is a financial institution that, at some portion of the time

relevant hereto, accepted assignment of MADRIZ's loan, and the loans of putative class

members. All claims and defenses that Plaintiff and the putative class have against GREENSKY

arising out of the solar panel purchase transaction are also valid against SYNOVUS, pursuant to

the terms of the purchase contract. Given the violations of law alleged below, and the Federal

Trade Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq.*, which subjects the holder

of a consumer credit contract to all claims and defenses of the consumer against the seller,

SYNOVUS is subject to all claims and defenses of Plaintiff against GREENSKY.

### DOE DEFENDANTS

9.       Defendants DOES 1 through 50 are persons or entities whose true names and capacities

are presently unknown to Plaintiff and who therefore are sued by such fictitious names. Plaintiff

is informed and believes and thereon alleges that each of the fictitiously named Defendants

perpetrated some or all of the wrongful acts alleged herein below, are responsible in some

manner for the matters alleged herein, and are jointly and severally liable to Plaintiff. Plaintiff

will seek leave of court to amend this complaint to state the true names and capacities of such

fictitiously named Defendants when ascertained.

### AGENCY AND ALTER EGO

10.      At all times mentioned herein each Defendant, whether actually or fictitiously named

herein, was the principal, agent (actual or ostensible), or employee of each other Defendant and

in acting as such principal or within the course and scope of such employment or agency, took

some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is

liable to Plaintiff for the relief prayed for herein.

11.      At all times mentioned herein, each Defendant was the agent, employee or affiliate of

each of the other Defendants and was acting within the course and scope of such agency or

employment. Defendants are jointly and severally liable to Plaintiff and to the class Plaintiff

seeks to represent, who were affected by any of the Defendants' illegal actions. In the alternative,

each Defendant conspired with and acted in concert with each other Defendant to do the acts

complained of herein, and in pursuit of their own pecuniary interests, participated in the

wrongful scheme and practices as alleged below.

12.     Plaintiff alleges that GREENSKY is the alter ego of its owners and that there is insufficient separation of identity between the owner(s) and the entities, and that the owner(s) exercise control over the assets and conduct of the corporate entities, such that injustice would result to Plaintiff and to the class Plaintiff seeks to represent in this matter if the corporate veils were to remain intact. Plaintiff is unaware of the identity of all of the owner(s) of GREENSKY at this time and will amend this complaint to allege their true identities when ascertained, up to and including the time of trial or execution of judgment.

13.     Plaintiff alleges that BRAND is the alter ego of its owners and that there is insufficient separation of identity between the owner(s) and the entities, and that the owner(s) exercise control over the assets and conduct of the corporate entities, such that injustice would result to Plaintiff and to the class Plaintiff seeks to represent in this matter if the corporate veils were to remain intact. Plaintiff is unaware of the identity of all of the owner(s) of BRAND at this time and will amend this complaint to allege their true identities when ascertained, up to and including the time of trial or execution of judgment.

14.     Plaintiff alleges that SYNOVUS is the alter ego of its owners and that there is insufficient separation of identity between the owner(s) and the entities, and that the owner(s) exercise control over the assets and conduct of the corporate entities, such that injustice would result to Plaintiff in this matter and to the class Plaintiff seeks to represent if the corporate veils were to remain intact. Plaintiff is unaware of the identity of all of the owner(s) of SYNOVUS at this time and will amend this complaint to allege their true identities when ascertained, up to and including the time of trial or execution of judgment.

15.     Contractors in California such as Green Nation Direct and Genesis Innovators were acting as the agents and at the direction of GREENSKY, BRAND, and SYNOVUS pursuant to the GREENSKY Merchant Program Agreement.

16.     Contractors in California such as GREEN NATION DIRECT and Genesis Innovators were acting as GREENSKY, BRAND, and SYNOVUS' agents for the purposes of executing the transactions that GREENSKY and ultimately BRAND and then SYNOVUS accepted

1    assignments for Defendants' own profit and gain.

2    17.    GREENSKY, BRAND, and SYNOVUS' officers and directors ratified the agreement

3    and sale to Plaintiff and the putative class members and the conduct of the contractors in

4    executing the transaction pursuant to the GREENSKY Merchant Program Agreement.

5                              **JURISDICTION AND VENUE**

6    18.    Venue is proper in the County of Los Angeles because GREENSKY, BRAND, and

7    SYNOVUS were at all times relevant herein, and are doing business in the County of Los

8    Angeles.

9    19.    Plaintiff alleges that GREENSKY, BRAND, and SYNOVUS are doing business in the

10   County of Los Angeles.

11   20.    This Court has jurisdiction over GREENSKY, BRAND, and SYNOVUS because all

12   Defendants are qualified to do business, and regularly conduct business throughout California.

13   Furthermore, the acts and omissions complained of occurred at locations in California.

14                              **FACTUAL ALLEGATIONS**

15   21.    In or around November 2015, a Spanish-speaking salesperson, Jorge Velazquez, knocked

16   on the door of Plaintiff's home in Madera, California to speak with Plaintiff about installing solar

17   panels on his roof.

18   22.    Both Plaintiff and his wife are mono-lingual Spanish speakers.

19   23.    Mr. Velazquez's card listed an email address and physical address for a company called

20   Green Nation Direct, or "GND." It listed a URL of www.solarparahispanos.com. The URL

21   www.solarparahispanos.com is no longer active.

22   24.    On information and belief, GND's website is active at the URL www.gndsolar.com. The

23   website is available in both English and Spanish. The "about us" section of the website reads as

24   follows:

25          GND is a Hispanic Company for Hispanics!

26          At GND we have one main goal ... to protect and educate our community through
            different programs in order to help them save money and improve the quality of
27          life of all Hispanic families in the United States.

28          Thanks to GND and their commitment, Hispanic families no longer have to be

victims of increases in the cost of electricity which continue to rise every day at exorbitant prices.

Thanks to GND, you can give your family the life you always wanted for them.

**GND THE HISPANIC SOLAR COMPANY FOR HISPANICS !!!**

A true and correct copy of the "about us" webpage is attached hereto as **Exhibit A** (typos, ellipses, and emphasis all appear in original text).

25.     GND directly markets to California consumers who are Spanish speakers.

26.     Mr. Velazquez spoke solely in Spanish, and extoled the benefits of installing solar panels. He represented that Plaintiff would save money on his energy bills by installing solar panels. Mr. Velazquez told Plaintiff he would get a $6,000 reimbursement to pay for the panels, and would get help paying taxes.

27.     Mr. Velazquez explained that Plaintiff would pay $118 per month for fifteen years, that he would not be charged for the first year of service, and that he would receive a 30% tax reimbursement. Mr. Velazquez also said that Plaintiff would have the option to buy the system. Mr. Velazquez said that the company, Plaintiff assumed he meant GND, would be responsible for upkeep of the system and would fix the panels if needed.

28.     Relying on Mr. Velazquez's representations, Plaintiff agreed to have the solar panels installed. Plaintiff explained to Mr. Velasquez that he wanted the contract option to purchase the panels.

29.     Mr. Velazquez did not provide any Spanish-language documents to Plaintiff. Instead, Mr. Velazquez gave Plaintiff an English-language contract to sign.

30.     According to GREENSKY's Merchant Program Agreement, GREENSKY approved the contract in advance of it being used by the Merchant GND/Genesis Innovators.

31.     However, even though Plaintiff signed some English documents, he was never given a copy of the executed English-language documents. Attached hereto as **Exhibit B** is a true and correct copy of the unsigned English-language document entitled "SOLAR SYSTEM PURCHASE AND INSTALLATION CONTRACT" that was given to Plaintiff on the day he purchased the panels.

32.     The "Contractor" on the contract is listed as "Genesis Innovators."

33.     Although all of the negotiations and purchase and financing of the solar panels took place wholly outside of Defendants' trade premises, all documents failed to contain, in immediate proximity to the space reserved for the buyer's signature, the following statement in a size equal to at least 12-point boldface type, which was dated and signed by the buyer, as required by Civil Code §1689.7(a)(4):

**Three-Day Right to Cancel**

**You, the buyer, have the right to cancel this contract within three business days.  You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice.  Include your name, your address, and the date you received the signed copy of the contract and this notice.**

**If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation.  For your part, you must make available to the contractor at your residence, in substantially as good condition as you received it, any goods delivered to you under this contract or sale.  Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk.  If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation.  If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract.**

This admonition was not provided to Plaintiff at all at the time of purchase, did not provide a space for the Plaintiff to sign and date, and was not provided in Spanish.

34.     On some date after the original purchase date, Mr. Velazquez returned to Plaintiff's residence to have him sign additional English-language documents. Once again, Mr. Velazquez did not provide Spanish-language documents, and did not give Plaintiff copies of any of the documents he signed.

35.     Once again, although Mr. Velazquez forced Plaintiff to sign new English-language documents at a place wholly outside of Defendants' trade premises, all documents failed to contain, in immediate proximity to the space reserved for the buyer's signature, the following statement in a size equal to at least 12-point boldface type, which was dated and signed by the buyer, as required by Civil Code §1689.7(a)(4):

**Three-Day Right to Cancel**

You, the buyer, have the right to cancel this contract within three business days.  You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice.  Include your name, your address, and the date you received the signed copy of the contract and this notice.

If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation.  For your part, you must make available to the contractor at your residence, in substantially as good condition as you received it, any goods delivered to you under this contract or sale.  Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk.  If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation.  If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract.

This admonition was not provided to Plaintiff at all at the time of purchase, did not provide a space for the Plaintiff to sign and date, and was not provided in Spanish.

36.     This admonition was not provided to Plaintiff at all at the time of the signing of the new documents, much less in Spanish. Mr. Velazquez informed Plaintiff that the panels would be installed as soon as possible. In fact, the panels were not installed for approximately another two months, until January 2016.

37.     Despite being installed in January 2016, the solar panels have never been functional. At some point, an individual named John Latorre came back to Plaintiff's property to evaluate the panels, but they were never connected to the electrical grid, and hence have not provided any electricity to the house.

38.     Plaintiff's wife called GND regarding the lack of connection to the electrical grid, and GND directed her to GREENSKY. Plaintiff's wife called GREENSKY and explained that the panels were not connected. GREENSKY told her that Plaintiff needed to pay someone else to connect them because it was not GREENSKY's problem.

39.     Plaintiff began receiving statements from GREENSKY. Plaintiff did not understand why he was being billed by GREENSKY, since he did not know a consumer loan had been opened in his name.

First Amended Complaint for Damages, Restitution and Injunctive Relief

40.     At first, the statements did not contain dollar amounts that were owing. In July 2017, GREENSKY began sending statements demanding that Plaintiff pay $120.26 per month.

41.     Having never received English or Spanish copies of the contracts, and having never had the panels connected to the electrical grid, Plaintiff attempted to contact GND, Genesis, and GREENSKY to have the panels removed, and have the contract rescinded. They all refused.

42.     Attached as **Exhibit C** is a copy of GREENSKY's Installment and Loan Agreement Retail Installment Credit Agreement dated June 15, 2016 with Plaintiff Arturo Madriz listed as the borrower, the lender listed as BRAND of Lawrenceville, Georgia, and an indication that GREENSKY paid $21,500 to a company known as Green Nation. Despite the fact that GREENSKY's Installment and Loan Agreement Retail Installment Credit Agreement has a place for the borrower and lender to sign, the document is not signed and was never signed by Plaintiff.

43.     The "GreenSky ® Installment Loan Agreement" that GREENSKY claims represents the installment loan contract between Plaintiff and GREENSKY is written in English and is not signed by Plaintiff, GREENSKY, or any other entity. The lender is listed as "The Brand Banking Company, Lawrenceville, GA."

44.     The "GreenSky ® Installment Loan Agreement" includes the following language:

> By signing below, each Borrower ("you") acknowledges that (i) Lender ("we" or "us") has approved Borrower(s) for a loan up to the Amount Financed as set forth in the Truth in Lending Disclosure above (which is part of this Agreement), (ii) each Borrower has received and retained a copy of Lender's Privacy Notice, (iii) each Borrower has read this Agreement, including and Addenda, and agrees to be bound by its terms, (iv) if this Agreement resulted in a sale in your home (In-Home Sale), the sales person has explained each Borrower's right to cancel and has provided a filled-in written Notice to Cancel. Any Notice of Right to Cancel and any additional notice of right to cancel provided in the sales contract for an In-Home Sale, as well as any accompanying addendum provided to Borrower, are incorporated here by reference.

45.     Attached as **Exhibit D** is a copy of another document received in response to a request to GREENSKY known as Shopping Pass, with Plaintiff Arturo Madriz's name. The Shopping Pass indicates that there are 240 payments beginning with "first transaction, 12 month promo period" with no payments required, followed by 240 amortized payment based on the balance at the end of the promo.

46.     In late 2017, Plaintiff began receiving past due notices from GREENSKY. Attached hereto as **Exhibit E** is a true and correct copy of a past due notice from GREENSKY dated October 12, 2017. The letter is signed "The Brand Banking Company, Lawrenceville, GA."

47.     Plaintiff is informed and believes and thereon alleges that at some point prior to the date on **Exhibit E**, GREENSKY assigned Plaintiff's loan to BRAND.

48.     Plaintiff continued to receive past due notices from GREENSKY. However, Plaintiff is informed and believes and thereon alleges that at some point in late 2017 or 2018, Plaintiff's account was transferred from BRAND to SYNOVUS. Attached hereto as **Exhibit F** is a true and correct copy of a past due notice from GREENSKY dated June 12, 2018. The letter is signed "Synovus Bank, a Georgia banking company."

49.     Plaintiff has been damaged by the illegal actions of the Defendants. He has spent time and money attempting to have these panels removed from his house, including by making numerous phone calls, has incurred credit damage, and has experienced pain and suffering.

50.     The unsigned English contracts (**Exhibits B** and **C**) and the debt collection letters (**Exhibits E** and **F**) are form documents that are used by Defendants and are sent to putative class members.

51.     At least during the past four years, Defendants have financed contracts with members of the putative class which did not comply with Civil Code §1689.7 and Civil Code §1632, and attempt to collect on loans where no amount is owed because of the violations with the underlying contract.

52.     Defendants owed a duty to members of the putative class to comply with Civil Code §1689.7 and Civil Code §1632 and ensure that loans for which they accepted assignment complied with California law.

### CLASS ACTION ALLEGATIONS

53.     Pursuant to California Code of Civil Procedure §382, Plaintiff brings this action on behalf of himself and all other persons similarly situated. Plaintiff brings this action in a representative capacity to remedy the ongoing unlawful, unfair, and fraudulent business practices alleged herein, and to seek redress on behalf of all those persons who have been affected thereby.

54.     Plaintiff is unable to state the precise number of potential members of the proposed class because that information is in the possession of Defendants. It consists of at least hundreds of members, and is so numerous that joinder of all members would be impracticable. The exact size of the proposed class, and the identity of the members thereof, will be readily ascertainable from the business records of Defendants.

55.     The class on whose behalf this complaint is brought is composed all California consumers:

    a) who entered into a home solicitation contract, as defined by Civil Code Section 1689.7(4), and a GreenSky Installment Loan Agreement financed by Defendants; for which contract failed to include:

        1. A statement in immediate proximity to the space reserved for the consumer's signature;

        2. The following statement in a size equal to at least 12-point boldface type:

**Three-Day Right to Cancel**

**You, the buyer, have the right to cancel this contract within three business days.  You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice.  Include your name, your address, and the date you received the signed copy of the contract and this notice.**

**If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation.  For your part, you must make available to the contractor at your residence, in substantially as good condition as you received it, any goods delivered to you under this contract or sale.  Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk.  If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation.  If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract.**

        3. which was dated and signed by the buyer;

b) at any time from the four years preceding the filing of this complaint.

56.     Among the members of the class defined herein, there is a subclass of California consumers whose purchase of goods and/or services was negotiated in a language other than English that is protected by Civil Code §1632(b), but who did not receive the purchase contract in the language in which the contract was negotiated (the "Subclass").

57.     The Class Definition is subject to such further definition, limitations, and exclusions as may be ordered by the Court.

## ASCERTAINABILTIY

58.     Plaintiff is informed and believes, and upon such information and belief alleges that individuals that fall within the Class Definition and the Subclass are ascertainable and can be identified with reasonable efficiency. The exact number and identities of the class and Subclass members are unknown at this time, but may be ascertained through discovery.

## COMMUNITY OF INTEREST

59.     There is a community of interest among the members of the proposed class in that there are questions of law and fact common to the proposed class that predominate over questions affecting only individual members. Proof of a common set of facts will establish the liability of Defendants, and the right of each member of the class to recover.

60.     The common questions of law and fact which predominate as to all class members include, *inter alia*:

a)      Whether the subject contracts were "home solicitation contracts or offers" as defined by Civil Code §1689.5(a);

b)      Whether all documents failed to contain, in immediate proximity to the space reserved for the buyer's signature, the following statement in a size equal to at least 12-point boldface type, which was dated and signed by the buyer, as required by Civil Code §1689.7(a)(4):

**Three-Day Right to Cancel**

**You, the buyer, have the right to cancel this contract within three business days.  You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place**

13

of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice. Include your name, your address, and the date you received the signed copy of the contract and this notice.

If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation.  For your part, you must make available to the contractor at your residence, in substantially as good condition as you received it, any goods delivered to you under this contract or sale.  Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk.  If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation.  If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract.

    c)    Whether Defendants' conduct constitute a violation of California's Home Solicitation Sales Act, Civil Code §1689.5;

    d)    Whether or not Defendants' pattern of practice in the sales of goods and/or services was deceptive or unfair.

61.    The common questions of law and fact which predominate as to all members of the Subclass include, *inter alia*:

    a)    Whether Defendants negotiated with members of the Subclass in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into a contract subject to the California Translation Act but failed to provide to Plaintiff and members of the Subclass prior to the execution of the subject contracts a translation of the subject contracts in the language in which the contract was negotiated.

62.    Proof of a common set of facts will establish Defendants' liability and the right of each class member to recover, including without limitation, practices used to execute unlawful sales of goods and/or services.

63.    The claims asserted by Plaintiff will be governed by the laws of the state of California and the injuries resulting from Defendants' conduct were incurred in California.

//

## TYPICALITY

64.     Plaintiff's claims are typical of those of the class he seeks to represent, and he will fairly and adequately represent the interests of the class. Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

## ADEQUATE REPRESENTATION

65.     Plaintiff, as a class representative, will fully and adequately assert and protect the interests of the class members and has retained competent and adequate legal counsel experienced in class action and complex litigation. Plaintiff is an adequate representative and will fairly and adequately protect the interests of the class members. Plaintiff's claims are typical of the class and subclass as they are all based on the same factual and legal theories, namely, the violation of numerous California statutes designed to protect consumers.

## SUBSTANTIAL BENEFIT

66.     A class action is superior to other available methods for the fair, just, and efficient adjudication of the claims asserted herein and will provide a substantial benefit to the court and litigants. Joinder of all Class Members is impracticable and, for financial and other reasons, it would be impractical for individual members to pursue separate claims. The prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications. Such varying adjudications on the same essential facts, proof, and legal theories would also create and allow the existence of inconsistent and incompatible rights with the Class and Subclass. The prosecution of separate actions by individual members would unduly burden the courts. Plaintiff anticipates no difficult in the management of this case as a class action.

## FIRST CAUSE OF ACTION
### (For Violation of the Home Solicitation Sales Act, Civil Code §1689.5 *et seq.*)
### (On Behalf Plaintiff and the Putative Class Against All Defendants)

67.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the paragraphs above.

68.     Defendants have failed and are continuing to fail to comply with Civil Code §1689.5, *et seq.* by failing to observe material requirements set forth therein.

69.     Plaintiff and the putative class members entered into home improvement contracts, as

defined by Business and Professions Code § 7151.2, financed by Defendants.

70.     Defendants' financing of the goods and/or services to Plaintiff and the putative class were "home solicitation contracts" as defined by Civil Code §1689.5(a), because the contracts were "made at other than appropriate trade premises." In addition, the solar panels, which are the subject of this action and the sales contract, constitute "goods" intended to be for personal, family, or household purposes as defined by Civil Code §1689.5(c).

71.     Defendants violated and continue to violate Civil Code §1689.7(a) by failing to provide Plaintiff and the putative class with home solicitation contracts that contain, in immediate proximity to the space reserved for the buyer's signature, the following statement in a size equal to at least 12-point boldface type, which was dated and signed by the buyer, as required by Civil Code §1689.7(a)(4):

**Three-Day Right to Cancel**

**You, the buyer, have the right to cancel this contract within three business days.  You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice.  Include your name, your address, and the date you received the signed copy of the contract and this notice.**

**If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation.  For your part, you must make available to the contractor at your residence, in substantially as good condition as you received it, any goods delivered to you under this contract or sale.  Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk.  If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation.  If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract.**

72.     Furthermore, Defendants violated and are continuing to violate Civil Code §1689.7(a)(4) by failing to provide Plaintiff and the putative class members with a home solicitation contract that contained the contract cancellation language listed Paragraph 71 in the language in which the transaction was negotiated in, i.e., Spanish.

73.     Because Defendants have failed to comply with Civil Code §1689.7, pursuant to Civil Code §1689.7(g), Plaintiff individually and on behalf of the putative class hereby rescinds and

cancels the home solicitation contracts entered into by Plaintiff and the putative class, within four years prior to the filing of this complaint and demands restitution for amounts paid to the Defendants, or any of them.

74.     Defendants are each liable directly for their own violations of Civil Code §1689.5, *et seq.*, and vicariously liable for each other's violations of Civil Code §1689.5, *et seq.*, pursuant to the terms of the contract with Plaintiff and the putative class whom allegedly entered into the same form contract, and pursuant to Civil Code §1804.2(a).

WHEREFORE, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**
**(For Violation of the California Translation Act, Civil Code §1632)**
**(On Behalf Plaintiff and the Putative Subclass Against All Defendants)**

75.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the paragraphs above.

76.     Plaintiff is a native Spanish speaker who has virtually no proficiency in English.

77.     Defendants market their products to Spanish-speaking consumers.

78.     While at Plaintiff's residence, GND/Genesis employee Mr. Velazquez only spoke Spanish to Plaintiff and his wife, Lidia. All negotiations for the solar panels were conducted in Spanish.

79.     Although negotiations were conducted in Spanish, Defendants failed to provide a Spanish translation of any contract regarding the sale or financing of the solar panels to Plaintiff. Furthermore, Defendants did not provide a Spanish-language contract cancellation option to Plaintiff, as required by Civil Code §1632, *et seq.*

80.     Defendants negotiated with Plaintiff and members of the Subclass in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into a contract for the purchase of goods pursuant to a retail installment sale (the "subject contracts") but failed to provide to Plaintiff and members of the Subclass prior to the execution of the subject contracts a translation of the subject contracts in the language in which the contract was negotiated. Defendants violations are ongoing.

81.     The aforementioned documents, which create rights and obligations of the parties, were

1   not prepared properly nor were they prepared in a language understandable by Plaintiff.

2   82.    The aforementioned documents are all agreements covered under the California

3   Translation Act, Civil Code § 1632(b)(1).

4   83.    Pursuant to the provisions of the California Translation Act, Civil Code § 1632(k),

5   Plaintiff requests that the court order that the purchase contract for the sale of the solar panels be

6   rescinded.

7   84.    Defendants are each liable directly for its own violations of Civil Code §1689.5, *et seq.*,

8   and vicariously liable for each other's violations of Civil Code § 1632 *et seq.*, pursuant to the

9   terms of the contract with Plaintiff and all other California consumers whom allegedly entered

10   into the same form contract, and pursuant to Civil Code §1804.2(a).

11       WHEREFORE, Plaintiff prays for relief as set forth below.

12

**THIRD CAUSE OF ACTION**
**(Violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788, *et seq.*)**

13   **(By Plaintiff and the Putative Class Against GREENSKY, BRAND, SYNOVUS, and**
**Applicable DOES)**

14

15   85.    Plaintiff realleges and incorporates herein by reference the allegations of each and every

16   paragraph above.

17   86.    The Rosenthal Act was enacted in 1976 to ensure the integrity of our banking and credit

18   industry. Civil Code §1788.1(b). The California Legislature found that "unfair or deceptive debt

19   collection practices undermine the public confidence which is essential to the continued

20   functioning of the banking and credit system and sound extensions of credit to consumers." Civil

21   Code §1788.1(a)(2).

22   87.    GREENSKY, BRAND, and/or SYNOVUS all, at times relevant herein, were "debt

23   collectors" within the meaning of Civil Code §1788.2(c). *See* Exhibits E, F.

24   88.    GREENSKY, BRAND, and/or SYNOVUS all, regularly and in the ordinary course of

25   business, on behalf of themselves or others, engage in acts and practices in connection with the

26   collection of consumer debt.

27   89.    GREENSKY, BRAND, and/or SYNOVUS have a non-delegable duty under the

28   Rosenthal Act not to commit violations of the Act, and not to allow their agents to commit such

1    violations, which duties GREENSKY, BRAND, and/or SYNOVUS themselves were prohibited

2    from violating.

3    90.     The purported payments that GREENSKY, BRAND, and/or SYNOVUS attempted to

4    collect from Plaintiff and the putative class were "consumer debts" within the meaning of Civil

5    Code §1788.2(f). Plaintiff and the putative class are "debtors" within the meaning of Civil Code

6    §1788.2(h) in that they are natural persons from whom GREENSKY, BRAND, and/or

7    SYNOVUS sought to collect a consumer debt alleged to be due and owing.

8    91.     GREENSKY, BRAND, and/or SYNOVUS attempted to collect payments from Plaintiff

9    and the putative class by, among other things, conducting collections efforts in-house, reporting

10    the deficiency balance to the credit reporting agencies as valid, and by making demands for

11    payment.

12    92.     GREENSKY, BRAND, and/or SYNOVUS made false representations to Plaintiff and the

13    putative class that they owed these payments, and the amount and legal status of the alleged debt,

14    by sending Plaintiffs standardized form demand letters, in which GREENSKY, BRAND, and/or

15    SYNOVUS stated that Plaintiff and the putative class's "loan is now 60+ days past due" when

16    they were not obligated to pay because of Defendants' violations of Civil Code §1632 and

17    §1689.5, *et seq.* This was and is a violation of Civil Code §1788.17 (through violation of 15

18    U.S.C. §1692e, including §1692e(2)).

19    93.     GREENSKY, BRAND, and/or SYNOVUS attempted to collect on a debt that Plaintiff

20    and the putative class are not obligated to pay because of Defendants' violations of Civil Code

21    §1632 and §1689.5, *et seq.* GREENSKY, BRAND, and/or SYNOVUS' conduct violated 15

22    U.S.C. §1692f, including §1692f(1), incorporated into the Rosenthal Act by Civil Code

23    §1788.17.

24    94.     As a proximate result of GREENSKY, BRAND, and/or SYNOVUS' violations of the

25    Rosenthal Act, Plaintiff and the putative class have been damaged in amounts that are subject to

26    proof.

27    95.     Plaintiff and the putative class are entitled to recover their actual damages pursuant to

28    Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(1), or in the alternative,

1    Civil Code §1788.30(a).

2    96.    GREENSKY, BRAND, and/or SYNOVUS' violations of the Rosenthal Act were willful

3    and knowing, thereby entitling Plaintiff and the putative class to recover statutory damages

4    pursuant to Civil Code §1788.17, which incorporates by reference the remedies of 15 U.S.C.

5    §1692k(a)(2)(A), or in the alternative, Civil Code §1788.30(b).

6    97.    Plaintiff and the putative class are entitled to attorneys' fees and costs pursuant to Civil

7    Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(3), or in the alternative, Civil

8    Code §1788.30(c).

9         WHEREFORE, Plaintiff prays for relief as set forth below.

10                    **FOURTH CAUSE OF ACTION**
                 **(For Violations of Business and Professions Code §17200, *et seq.*)**
11               **(By Plaintiff and the Putative Class Against All Defendants)**

12   98.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and

13   every allegation contained in the paragraphs above.

14   99.    Plaintiff has standing to bring this claim because he has lost money or property as a result

15   of the misconduct alleged and he can maintain a class pursuant to the laws in the State of

16   California.

17   100.   The UCL defines unfair competition to include any unlawful, unfair, or fraudulent

18   business act or practice, and prohibits such conduct. Beginning on an exact date unknown to

19   Plaintiff, but at all times relevant herein, Defendants committed acts of unfair competition

20   proscribed by the UCL, including the practices alleged herein.

21   101.   As previously alleged, in the four years preceding the filing of this action, and continuing

22   for all relevant times, Defendants developed, implemented, and participated in a deliberate and

23   ongoing scheme involving the door-to-door sale and credit financing of consumer products in

24   California where they unlawfully, deceptively and unfairly against putative class members:

25        a)   failing to provide Plaintiff and the putative class with home solicitation contracts

26             that contain, in immediate proximity to the space reserved for the buyer's

27             signature, the following statement in a size equal to at least 12-point boldface

28             type, which was dated and signed by the buyer, as required by Civil Code

§1689.7(a)(4):

**Three-Day Right to Cancel**

**You, the buyer, have the right to cancel this contract within three business days. You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice. Include your name, your address, and the date you received the signed copy of the contract and this notice.**

**If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation. For your part, you must make available to the contractor at your residence, in substantially as good condition as you received it, any goods delivered to you under this contract or sale. Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk. If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation. If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract.**

b)  With regards to the Subclass, fail to comply with Civil Code §1632(b) by negotiating in a language protected by Civil Code §1632(b) and then failing to provide a translation of the contract to the consumer in the language in which the contract was negotiated.

102.    The business acts and practices of Defendants, as hereinabove alleged, constitute unlawful business practices in that the acts and practices offend public policy and are substantially injurious to consumers. The acts and practices have no utility that outweighs the substantial harm to consumers.

103.    The business acts and practices of Defendants as hereinabove alleged, constitute fraudulent business practices in that the acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations and avoid mandated disclosures; and by use of such deception, induce consumers to enter transactions which they otherwise would decline. The practices alleged are fraudulent and unfair, constituting deceptive practices which were predatory under the circumstances set forth herein.

104.    The unlawful, unfair, and fraudulent business acts and practices described herein present

1    a continuing threat in that Defendants, or any of them, are currently engaging in such acts and

2    practices and will persist and continue to do so unless and until an injunction is issued by this

3    Court.

4    105.   As a direct and proximate result of the acts and practices described herein, Defendants

5    have received and collected substantial monies from putative class members, including but not

6    limited to Plaintiff. Defendants have unlawfully, unfairly and unjustly continued to hold

7    revenues and profits derived directly or indirectly from affected members of the general public,

8    including Plaintiff and the putative class, who have been victimized by the acts and practices

9    challenged herein. Defendants have failed to disgorge any of these revenues that do not properly

10   belong to them and restore in the form of restitution all such funds which properly belong to the

11   affected consumers.

12   106.   Pursuant to Business and Professions Code §17203, Plaintiff seeks a public injunction as

13   follows:

14        a)   Defendants shall not, directly or indirectly, sell goods and/or services though

15             home solicitation contracts without notice of cancellation rights in the language in

16             which the contract was negotiated, as required by the Home Solicitation Sales

17             Act;

18        b)   Defendants shall not, directly or indirectly, sell goods and/or services while

19             conducting negotiations in a language protected by Civil Code §1632(b) and then

20             failing to provide a translation of the contract to the consumer in the language in

21             which the contract was negotiated.

22   107.   Plaintiff is also seeking an order that Defendants provide appropriate restitution to

23   Plaintiff and the putative class.

24   108.   Plaintiff and the class are entitled to an award of attorneys' fees and costs in prosecuting

25   this action under Code of Civil Procedure §1021.5 because:

26        a)   A successful outcome in this action will result in the enforcement of important

27             rights affecting the public interest by protecting the general public from unfair,

28             unlawful, and deceptive practices, by preventing consumer fraud in door to door

1            sales.

2        b)     This action will result in a significant public benefit by causing the disgorgement

3                  of revenues improperly collected and retained by Defendants, together with

4                  interest on that money and through the issuance of an injunction against unlawful

5                  and deceptive sales practices.

6        c)     Unless this complaint is prosecuted, Defendants' activities will go unremedied

7                  and will continue, and consumers in the State of California will not recover

8                  money properly belonging to them.

9        d)     Plaintiff is an individual of modest means with limited access to the courts and the

10                 civil justice system. Unless attorneys' fees, costs and expenses are awarded

11                 against Defendants, Plaintiff will not recover the full measure of his loss.

12     WHEREFORE, Plaintiff prays for relief as set forth below.

13                     **<u>PRAYER FOR RELIEF</u>**

14     WHEREFORE, Plaintiff prays for judgment as follows:

15  (1)    For an order finding and declaring that Defendants' acts and practices as challenged

16  herein are unlawful, unfair, and fraudulent;

17  (2)    Pursuant to Business and Professions Code §17203, Plaintiff seeks an injunction on

18  behalf of the California general public as follows:

19        a)     Defendants shall not, directly or indirectly, finance goods and/or services based

20                 upon home solicitation contracts without notice of cancellation rights in the

21                 language in which the contract was negotiated, as required by the Home

22                 Solicitation Sales Act § 1689.7(a)(4);

23        b)     Defendants shall not, directly or indirectly, finance goods and/or services which

24                 are conducted in a language protected by Civil Code §1632(b) and that fail to

25                 provide a translation of the contract to the consumer in the language in which the

26                 contract was negotiated.

27  (3)    Rescission of Plaintiff's contract(s) that violated the Home Solicitation Sales Act and the

28  California Translation Act;

(4)     Restitution;

(5)     For pre-judgment interest to the extent permitted by law;

(6)     For all remedies allowed pursuant to Business and Professions Code §17203;

(7)     For an award for attorneys' fees, costs, and expenses, pursuant to Code of Civil Procedure §1021.5 and The Rosenthal Act, Civil Code §1788.62.

(8)     For such other relief as the Court may deem just and proper.

Dated: January 16, 2019                    KEMNITZER, BARRON & KRIEG, LLP

                                 By:     _____
                                         KRISTIN KEMNITZER

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury to the extent authorized by law.

Dated:  January 16, 2019                    KEMNITZER, BARRON & KRIEG, LLP

By:  _____

KRISTIN KEMNITZER

25

# EXHIBIT A

9/6/2018

OUR COMPANY

**GND** pure energy

HOME   OUR COMPANY   HOW IT WORKS   BENEFITS   CONTACT

GREEN **NATION DIRECT**
**CALL US:** 1-800- 524-2239

## ABOUT US

GND is a Hispanic Company for Hispanics!

At GND we have one main goal ... to protect and educate our community through different programs in order to help them save money and improve the quality of life of all Hispanic families in the United States.

Thanks to GND and their commitment, Hispanic families no longer have to be victims of increases in the cost of electricity which continue to rise every day at at exorbitant prices.

*With GND no longer have to be a victim of the electrical companies or the high prices of electricity. Use more electricity at a lower price!*

Thanks to GND, you can give your family the life you always wanted for them.

**GND THE HISPANIC SOLAR COMPANY FOR HISPANICS !!!**

# TAKE YOUR FIRST STEP

AND MAKE IT HAPPEN!

Three reasons to go Solar:

SAVINGS
ENVIRONMENT
EARNINGS

# OUR TEAM OF PROFESSIONALS

http://www.gndsolar.com/our-company.html

9/6/2018                                    OUR COMPANY

GND PERSONNEL

Give us a call at 1.800.524.2239 and one of our consultants in the industry will visit you, make a study of your electricity consumption, and based on that information we will help you choose the right option that suits you better. Protect yourselves from the continuing increasing of electrical bills.

## OUR CLIENTS ARE CONTRIBUTING TO A BETTER FUTURE AND ALSO ENJOYING THE SAVINGS TODAY

*The new solar system works wonders, I thought it was going to be complicated but the process was very easy - Thanks GND*

ROSA A. SALINAS

*I am very satisfied with the service I got from GND Solar, and now I'm saving with my new solar system.*

PEDRO MANRIQUEZ

*My solar system looks great on my house roof! I'm happy with the EFFICIENCY and Professionalism of GND and even more with the savings!*

ESAU MORALES

ARE YOU READY TO REDUCE YOUR BILL PAYMENTS AND RECEIVE MONEY FROM YOUR ELECTRICAL COMPANY FOR THE EXTRA ENERGY YOU ARE PRODUCING?

9/6/2018

OUR COMPANY



HOME    OUR COMPANY    HOW IT WORKS    BENEFITS    CONTACT

GREEN NATION DIRECT

By going solar with GND, you can help create a world that works with 100% clean energy. **Why do you think Americans are installing new solar panels every 3 minutes?** They know that solar power is clean and renewable, good for your budget and the planet.





FIND OUT IF YOU QUALIFY

Enter Address

Enter City

Enter State

Enter Zip

Enter Country

Copyright © 2015 GND Solar. All Rights Reserved.

# EXHIBIT B

# SOLAR SYSTEM PURCHASE AND INSTALLATION CONTRACT

This Solar System Purchase and Installation Contract (the "Contract") is made effective as of _____ (the "Effective Date"), and entered into by and between:



| **CONTRACTOR** | **AND** | **CLIENT(S)** |
|---|---|---|
| GENESIS INNOVATORS | | Arturo Madriz |
| (Contractor Name) | | (Client(s) Name(s)) |
| 902372 | | |
| (License Number) | | (Resident Address) |
| 8431 Aqueduct Ave. | | |
| (Address) | | (City, State & Zip) |
| North Hills, CA 91343 | | |
| (City, State & Zip) | | (Phone) |
| (818) 455-1674 | | |
| (Phone) | | (Alternate Phone) |

(each a "Party" and collectively the "Parties").

**You (the Client) are entitled to a completely filled in copy of this Contract, signed by both you and the Contractor, before any work may be started.**

Solar System Purchase and Installation Contract                                    Page 1

Client(s) Initials: _____ _____

1.    **DESCRIPTION OF WORK:**

    a.    **Description of the Project and Description of the Significant Materials to be Used and Equipment to be installed.**

        Contractor will furnish all labor, materials, equipment, supervision, and contract administration to complete in a good and workmanlike manner the following: Installation of solar system equipment at Client's real property, located at ▬▬▬▬▬▬▬▬

(the "Property"), as described more fully by the "Description of Work and Materials" incorporated and attached hereto as **Exhibit A**. Contractor's scope of work under this Contract does not include any of the following items:

    a)    Remove or dispose of any hazardous substances that currently exist on Client's Property;

    b)    Improve the construction of the roof of Client's Property to support the Solar System;

    c)    Remove or replace existing rot, rust or insect-infested structures;

    d)    Provide structural framing for any part of Client's Property;

    e)    Pay for or correct construction errors, omissions, or deficiencies by Client or Client's Contractors;

    f)    Pay for, remove or remediate mold, fungus, mildew or organic pathogens;

    g)    Install any smoke detectors, sprinklers or life safety equipment required by municipal code or inspectors as a result of the Solar System installation;

    h)    Pay for the removal or re-location of equipment, obstacles or vegetation in the vicinity of the Solar System;

    i)    Move items unassociated with the Solar System around Client's Property; and

    j)    Other: _____

2.    **CONTRACT PRICE AND PAYMENT SCHEDULE:**

| | | |
|---|---|---|
| 1) | __228__ months at 5.99% with Green Sky: | **$16,140** |
| 2) | First 12 months no interest no pay: | $ 0.00 |
| 3) | Payment after 12 months: | **$118.71** |

    a.    **CONTRACT PRICE:** Client agrees to pay Contractor the fixed sum of $____**$16,140**____ (the "Contract Price") for the work to be performed under this Contract, subject to additions and deductions pursuant to change orders agreed upon in writing by the parties.

Solar System Purchase and Installation Contract                                    Page 2

Client(s) Initials: _____  _____

**b.** **DOWN PAYMENT:** Client agrees to pay Contractor a down payment of $ __0.00__ (the "Down Payment") at the time of signing this Contract. **THE DOWN PAYMENT MAY NOT EXCEED $1,000 OR 10 PERCENT OF THE CONTRACT PRICE, WHICHEVER IS LESS.**

**c.** **SCHEDULE OF PROGRESS PAYMENTS:**

| Work or Service Performed | Amount Due on Completion |
|---|---|
| Engineering of Solar System and Installation | $ 4,842 |
| Order of _____ 20 _____ panels | $ 3,228 |
| Order of _____ 1 _____ inverter | $ 1,614 |
| Delivery of Solar System to Installation Site | $ 6,456 |
| Installation Start Date | $ |
| Final City Inspection | $ |
| **Sub-total of Progress Payments** | $ |
| **Down Payment** | $ |
| **TOTAL CONTRACT PRICE** | $ 16,140 |

The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment. **IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWN PAYMENT.**

**3.** **APPROXIMATE PROJECT START AND COMPLETION DATES:** The work to be performed under this Contract shall be commenced on approximately ___ **Nov 13, 2015** ___ as long as any required building permits are received and any agreed upon funds are paid to Contractor. The work performed under this Contract shall be completed by approximately ___ **Feb 16, 2016** ___, subject to permissible delays as defined in this Contract.

**4.** **TERM:** This Contract will terminate automatically upon completion by Contractor of the Services required by this Contract.

---

Solar System Purchase and Installation Contract

Page 3

Client(s) Initials: _____ _____

## 5.    PERFORMANCE OF EXTRA WORK AND CHANGE-ORDER WORK NOTICE:

Extra Work and Change Orders become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the costs to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments. The Contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

6.    **SOLAR REBATES AND TAX CREDITS:** It is Client's sole responsibly to obtain, request, pursue, and submit paperwork for any and all solar rebates and tax credits for which Client may be eligible for.

7.    **SOLAR SYSTEM MAINTENANCE AND REPAIR:** Client is responsible for continued monitoring and maintenance of the Solar System.

8.    **COMMERCIAL GENERAL LIABILITY INSURANCE (CGL):** Contractor carries commercial general liability insurance written by CBIA Insurance Agency. You (the Client) may call CBIA Insurance Agency at (877) 900-2242 to check the Contractor's insurance coverage.

9.    **HOMEOWNER'S INSURANCE:** Client agrees to maintain customary homeowner's insurance covering damage to Client's property during the term of this Contract, including damage caused by the installation, connection, operation and maintenance of the Solar System, as long as the damage was not caused by Contractor's gross negligence. Client is responsible for contacting his or her insurance company and asking if his or her policy includes such damage. If Client needs to purchase additional insurance to comply with this paragraph, then Client is responsible for obtaining, maintaining and paying for the additional coverage. Client will be solely responsible for the consequences of not doing so. Contractor shall not be responsible for damage caused to the Solar System by Client or persons Client invites onto his or her Property (other than Contractor and its agents).

10.    **WORKERS' COMPENSATION INSURANCE:** Contractor carries workers' compensation insurance for all employees. Contractor will provide proof of workers' compensation insurance upon Client's request.

11.    **MECHANICS' LIEN WARNING:** Anyone who helps improve your property, but who is not paid, may record what is called a mechanics' lien on your property. A mechanics' lien is a claim, like a mortgage or home equity loan, made against your property and recorded with the county recorder. Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve your property may record mechanics' liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit. To preserve their right to record a lien, each

Client(s) Initials: _____ _____

subcontractor and material supplier must provide you with a document called a '20-day Preliminary Notice.' This notice is not a lien. The purpose of the notice is to let you know that the person who sends you the notice has the right to record a lien on your property if he or she is not paid.

BE CAREFUL. The Preliminary Notice can be sent up to 20 days after the subcontractor starts work or the supplier provides material. This can be a big problem if you pay your contractor before you have received the Preliminary Notices. You will not get Preliminary Notices from your prime contractor or from laborers who work on your project. The law assumes that you already know they are improving your property.

PROTECT YOURSELF FROM LIENS. You can protect yourself from liens by getting a list from your contractor of all the subcontractors and material suppliers that work on your project. Find out from your contractor when these subcontractors started work and when these suppliers delivered goods or materials. Then wait 20 days, paying attention to the Preliminary Notices you receive.

PAY WITH JOINT CHECKS. One way to protect yourself is to pay with a joint check. When your contractor tells you it is time to pay for the work of a subcontractor or supplier who has provided you with a Preliminary Notice, write a joint check payable to both the contractor and the subcontractor or material supplier.

For other ways to prevent liens, visit CSLB's website at www.cslb.ca.gov or call CSLB at 1-800321-CSLB (2752). **Remember, if you do nothing, you risk having a lien placed on your home.** This can mean that you may have to pay twice, or face the forced sale of your home to pay what you owe.

12.    **INFORMATION ABOUT THE CONTRACTORS STATE LICENSE BOARD (CSLB):** CSLB is the state consumer protection agency that licenses and regulates construction contractors. Contact CSLB for information about the licensed contractor you are considering, including information about disclosable complaints, disciplinary actions and civil judgments that are reported to CSLB. Use only licensed contractors. If you file a complaint against a licensed contractor within the legal deadline (usually four years), CSLB has authority to investigate the complaint. If you use an unlicensed contractor, CSLB may not be able to help you resolve your complaint. Your only remedy may be in civil court, and you may be liable for damages arising out of any injuries to the unlicensed contractor or the unlicensed contractor's employees.

   **For more information:**

   **VISIT** CSLB's website at www.cslb.ca.gov

   **CALL** CSLB at 1-800-321-CSLB (2752)

   **WRITE** CSLB at P.O. Box 26000, Sacramento, CA 95826

---

Client(s) Initials: _____ _____

**13. THREE-DAY RIGHT TO CANCEL:**

[ ]     The law requires that the CONTRACTOR give you a notice explaining your right to cancel. Initial the check box if the CONTRACTOR has given you a 'Notice of the Three-Day Right to Cancel'.

The Notice of the Three-Day Right to Cancel is attached hereto as Exhibit B.

**14.**     TERMINATION OF CONTRACT: In addition to any and all other rights a party may have available according to law, if a party defaults by failing to substantially perform any provision, term or condition of this Contract, including without limitation the failure to make a monetary payment when due, the other party may terminate the Contract by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving such notice shall have ten (10) days from the effective date of such notice to cure the default(s). Unless waived by a party providing notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Contract. This provision shall apply and be effective only after Client's three (3) day right to cancel has expired.

**15.**     REMEDIES: In addition to any and all other remedies a party may have available according to law, in the event this contract is terminated pursuant to paragraph 14 as a result of Client's default, Contractor will submit an invoice to Client for payment of any and all services rendered, any and all materials purchased, and for all costs associated with the removal of any portion of the Solar System as a direct and proximate result of Client's default(s). Contractor reserves the right to record a mechanics lien on Client's real property as defined in paragraph 1(a) of this Contract if Client fails to pay for services and/or materials rendered to Client by Contractor, including costs associated with any removal of the Solar System.

**16. LIMITATION OF LIABILITY:**

THE TOTAL LIABILITY FOR DAMAGES TO CLIENT UNDER THIS CONTRACT (OTHER THAN DAMAGES TO CLIENT ARISING FROM THE FRAUD, WILLFUL INJURY OR VIOLATIONS OF LAW OF CONTRACTOR OR ITS AGENTS) SHALL IN NO EVENT EXCEED THE TOTAL OF ALL PAYMENTS MADE BY CLIENT UNDER THIS CONTRACT. THIS WILL BE THE SOLE AND EXCLUSIVE REMEDY AND CLIENT HEREBY WAIVES ALL OTHER REMEDIES OR DAMAGES AT LAW OR EQUITY, EVEN IF CLIENT HAS GREATER RIGHTS UNDER CALIFORNIA LAW, WHICH CLIENT SHOULD CONSULT. NO PARTY IS RESPONSIBLE FOR ANY CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY OR INDIRECT DAMAGES, LOST PROFITS OR LOSSES UNDER OR RELATING TO THIS CONTRACT, IN TORT OR CONTRACT, INCLUDING ANY NEGLIGENCE OR OTHERWISE.

Client(s) Initials: _____

Client(s) Initials: _____ _____

17.  **WARRANTY:** Contractor will provide its services and meet its obligations under this Contract in a timely and workmanlike manner, using knowledge and recommendations for performing the services which meet generally acceptable standards in Contractor's community and region, and will provide a standard of care equal to, or superior to, care used by providers similar to Contractor on similar projects. Warranty does not include normal wear and tear including weather related issues nor equipment or material otherwise covered by manufacturer warranties. Contractor will not warranty any communication ports/systems or routers.

EXCEPT AS EXPRESSLY PROVIDED HEREIN, CONTRACTOR MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, REGARDING ITS OBLIGATIONS OR THE SOLAR SYSTEM. TO THE EXTENT THE LAW ALLOWS, THERE IS NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND SOLAR PROVIDER DISCLAIMS ANY AND ALL IMPLIED WARRANTIES.

Client(s) Initials: _____ _____

18.  **NOTICE:** Any notice or communication required or permitted under this Contract will be sufficiently given if delivered in person or by certified mail, return receipt requested, to the addresses set forth in the opening paragraph or to such other address as one party may have furnished to the other in writing.

19.  **INDEMNIFICATION:** Client agrees to defend, indemnify and hold harmless Contractor and its affiliates, officers, directors, members, employees and agents (the "Indemnified Persons") from and against any losses, damages or claims arising out of or in connection with Client's negligence or gross misconduct, or the negligence or gross misconduct of any other person unaffiliated with Contractor who may live at or come onto Client's property. Client agrees to defend, indemnify and hold the Indemnified Persons harmless from and against any and all liabilities, losses, damages, penalties, claims, judgments or expenses (including reasonable legal fees and expenses) that they may incur or suffer by reason of the existence, uncovering or unveiling, or any release of any hazardous or toxic substance, waste or material, or any other substance, pollutant or condition that poses a risk to human health or the environment on Client's property that was not brought onto Client's property by the Indemnified Persons.

20.  **WAIVER:** Failure of either party to insist on strict compliance with any of the terms, covenants, and conditions of this agreement shall not be deemed a waiver of such terms, covenants, and conditions, or of any similar right or power hereunder at any subsequent time.

21.  **FORCE MAJEURE:** If either party hereto is prevented in the performance of any act required hereunder by reason of act of God, fire, flood, or other natural disaster, malicious injury, strikes, lock-outs, or other labor troubles, riots, insurrection, war or

Client(s) Initials: _____ _____

other reason of like nature not the fault of the party in performing under this Agreement, then performance of such act shall be excused for the period of the delay and the period of the performance of any such act shall be extended for a period equivalent to the period of such delay except that if any delay exceeds six months, then the party entitled to such performance shall have the option to terminate this Agreement.

22.   **MARKETING MATERIALS:** Client agrees that Contractor has the right to use graphical representations or photography of the Solar System and productivity data in its marketing and promotional materials. Client further agrees that Contractor has the right to place yard signs on Client's Property, as identified and described herein, indicating Contractor's name and company information.

23.   **ENTIRE AGREEMENT:** This Contract contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written concerning the subject matter of this Contract. This Contract supersedes any prior written or oral agreements between the parties.

24.   **EXHIBITS:** Each exhibit attached hereto are hereby incorporated herein by reference.

25.   **MODIFICATION:** Any alleged oral agreements shall have no force or effect. No modification of this Agreement shall be effective unless it is in writing and signed by the party obligated under the modification.

26.   **COOPERATION:** The Parties hereto hereby agree to execute all such other documents and to take all such other action as may be reasonably necessary to effect the purposes of this Contract.

27.   **ASSIGNMENT:** Client may not assign this Contract without the prior written consent of Contractor. Contractor may assign this Contract along with all its rights and obligations to any third party without notice for any purpose, including, without limitation, collection of unpaid amounts, or in the event of an acquisition, corporate reorganization, merger or sale of substantially all of its assets to another entity. Contractor may change the authorized agents and retain authorized agents of its choosing to perform Contractor's obligations under this Contract. Any assignment of Contractor's role under this Contract shall not result in any change to Contractor's or Client's rights and obligations under this Contract.

28.   **SUCCESSORS:** This Agreement shall inure to the benefit of, and shall be binding upon, each of the parties hereto and their successors, heirs, and assigns.

29.   **GOVERNING LAW:** This Agreement is made and entered into in the State of

Client(s) Initials: _____ _____

California and the laws of said state shall govern the validity and interpretation hereof, and the performance of the undersigned hereto of his respective duties and obligations hereunder. The parties agree that the Superior Court of California, County of Los Angeles is the proper venue.

30.    **ARBITRATION:** The Parties hereto agree to settle all disputes, claims, controversies, or disagreements arising from or relating to (i) any aspect of this agreement, including but not limited to, the interpretation, validity, enforceability, breach, default, or termination thereof; or (ii) any aspect of the relationship between the Parties hereto, whether in contract, tort, statute or any other legal theory by binding arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules. Prior to commencing arbitration, a Party must first send a written "Notice of Dispute" via certified mail to the other Party. The Notice of Dispute must describe the nature and basis for the Dispute and the relief sought. If the Parties hereto are unable to resolve the Dispute within ninety (90) days, then either Party may commence arbitration. The Arbitrator shall be bound by the terms of this Agreement. No matter the circumstances, the arbitrator shall not award punitive, special, exemplary, indirect, or consequential damages to either Party. The arbitration shall be conducted at a mutually agreeable location within thirty (30) miles of Client's Property, as identified and described herein. Judgment on an arbitration award may be entered in any court of competent jurisdiction. Nothing in this paragraph shall preclude either Party from seeking provisional remedies in aid of arbitration from a court of competent jurisdiction.

NOTICE: BY INITIALING THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION" PROVISION DECIDED BY NEUTRAL BINDING ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE BUSINESS AND PROFESSIONS CODE OR OTHER APPLICABLE LAWS. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. YOU HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION" PROVISION TO NEUTRAL ARBITRATION.

**Client(s) Initials:** _____ _____

31.    **ATTORNEY FEES:** In the event of a dispute or litigation arising out of this agreement, the prevailing party shall be entitled to recover reasonable attorney fees, expenses and costs, as determined by the arbitrator.

Client(s) Initials: _____ _____

32. **VOLUNTARY EXECUTION:** Each party acknowledges and warrants that their signing of this Agreement is knowing, free, and voluntary.

33. **COUNTERPARTS:** This Contract and all amendments to it may be executed in counterparts, each of which shall be deemed an original. A facsimile or electronic signature shall be deemed to be the equivalent of the actual original signature. All counterparts so executed shall constitute one document binding all the Parties hereto.

34. **REPRESENTATIVE CAPACITY:** Each person signing this agreement in a representative capacity warrants that he or she has full authority to bind his or her principal to this agreement.

## SIGNATURES

This Agreement is executed in the State of California, County of Los Angeles.

The undersigned acknowledge and agree to the foregoing terms and conditions of this Contract.

**CONTRACTOR:**

DATE: _____

_____
GENESIS INNOVATORS
Print Name:

Title:

**CLIENT:**

DATE: _____

_____
Client Signature

DATE: _____

_____
Client Signature

Client(s) Initials: _____ _____

# EXHIBIT C

# GreenSky® Installment Loan Agreement

## RETAIL INSTALMENT CREDIT AGREEMENT

Reference Number: Rebook - 1511133161
Merchant/Provider: Green Nation

Application ID: ▮▮▮▮▮ 2512     Date: 06/15/2016
LENDER: The Brand Banking Company, Lawrenceville, GA

Lender Correspondence Address: PO Box 29429, Atlanta, GA 30359,
Attention: Correspondence

Representative:
Borrower: Arturo Madriz
Phone Number: ▮▮▮▮▮▮▮
Address: 13130 Robbins Ln
City/State/Zip: Madera CA 93638

Borrower:
Phone Number:
Address:
City/State/Zip:

The Finance Charge below includes $1,287.84 of deferred interest, which will be waived if you pay off your entire loan balance within 12 months from the date of your 1st transaction. Depending upon the timing of your purchases and the payments you make, your actual Annual Percentage Rate may vary from the estimated Annual Percentage Rate set forth in the Truth in Lending Disclosure form below and may be as high as the non-promotional annual interest rate of 5.99% as set forth in this Agreement.

| T R U T H - I N - L E N D I N G - D I S C L O S U R E | ANNUAL PERCENTAGE RATE The cost of credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid when you have made all payments as scheduled |
|---|---|---|---|---|
| | 5.99% (e) | $ 16,727.20 (e) | $ 21,500.00 (e) | $ 38,227.20 (e) |

| | | Your payment schedule will be: | | |
|---|---|---|---|---|
| | Number of Payments | Amount of Payments | | When Payments are Due |
| | 12 | $ 0.00 (e) | | Beginning approximately one month after the 1st transaction and monthly thereafter for a total of 12 Months ("Promotional Payment Period") |
| | 239 | $ 159.28 (e) | | Beginning monthly thereafter for a total of 239 months |
| | 1 | $ 159.28 (e) | | Approximately 252 months after the 1st transaction. |

Late Charge: If payment is more than 10 days late, you will be charged the lesser of $39 ($15 in Iowa) or 5% of the payment amount past due.

Prepayment: If you pay off early, you will not have to pay a penalty and you may be entitled to a refund of part of the finance charge.
See the rest of this document for any additional information for nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.
"(e)" means estimate

Itemization of Amount Financed: $  21,500.00  (e) — Paid to  Green Nation

By signing below, each Borrower ("you") acknowledges that (i) Lender ("we" or "us") has approved Borrower's for a loan up to the Amount Financed as set forth in the Truth in Lending Disclosure above (which is part of this Agreement), (ii) each Borrower has received and retained a copy of Lender's Privacy Notice, (iii) each Borrower has read this Agreement, including any Addenda, and agrees to be bound by its terms, (iv) if this Agreement resulted from a sale in your home ("In-Home Sale"), the sales person has explained each Borrower's right to cancel and has provided a filled-in written Notice of Right to Cancel. Any Notice of Right to Cancel and any additional notice of right to cancel provided in the sales contract for an In-Home Sale, as well as any accompanying addendum provided to Borrower, are incorporated herein by reference. Unless any Borrower exercises the right to cancel, Lender agrees to pay the Amount Financed to Merchant/ Provider for an In-Home Sale upon receipt of a proper, completed and signed Certificate of Completion or other completion form, (v) either Borrower may direct Lender to make payments to Merchant/Provider by using a Purchasing Card (if provided by Lender), and (vi) neither Borrower is a co-signer. A Certificate of Completion is required unless Borrower directs Lender to make payments to Merchant/Provider by using a Shopping Pass or Purchasing Card.

NOTICE TO THE BUYER: 1. THIS IS A CONSUMER CREDIT TRANSACTION. 2. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 3. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS CREDIT AGREEMENT. 4. YOU MAY PREPAY THE UNPAID BALANCE UNDER THIS AGREEMENT AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO RECEIVE A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW. 5. THE FIRST USE OF THE SHOPPING PASS, PURCHASING CARD, OR THE ASSOCIATED INSTALLMENT LOAN TO MAKE A PURCHASE WILL CONSTITUTE ACCEPTANCE BY (ALL) BORROWER(S) OF THE TERMS OF THE ACCOMPANYING INSTALLMENT LOAN AGREEMENT. THE DATED PHYSICAL OR ELECTRONIC RECORD OF SUCH USE WILL EVIDENCE THE SIGNATURE OF (ALL) BORROWER(S) ON THIS AGREEMENT. (Application ID: 1606152512 )

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. NON-NEGOTIABLE CONSUMER NOTE.
RETAIL INSTALMENT CREDIT AGREEMENT

Borrower: Sign Here: _____     Date: _____
If not physically signed and dated above, see electronic signature

Borrower: Sign Here: _____     Date: _____
If not physically signed and dated above, see electronic signature

LENDER:   /s/   The Brand Banking Company, Lawrenceville, GA          Date: 06/15/2016

IN-HOME SALE CUSTOMERS: ARIZONA, CONNECTICUT, NORTH DAKOTA AND RHODE ISLAND RESIDENTS: THIS INSTRUMENT IS BASED UPON A HOME/PERSONAL SOLICITATION SALE SUBJECT TO THE PROVISIONS OF TITLE 44, CHAPTER 15 OF THE ARIZONA REVISED STATUTES IN ARIZONA, THE HOME SOLICITATION SALES ACT IN CONNECTICUT, AND THE NORTH DAKOTA CENTURY CODE IN NORTH DAKOTA. THIS INSTRUMENT IS NOT NEGOTIABLE.

For your convenience, we may provide you with certain materials in both the Spanish and English languages. You agree that, to the greatest extent not prohibited by law, the English text will control.

TERMS AND CONDITIONS CONTINUE ON NEXT PAGE

1. Installment Loan Program. You may make purchases of goods or services from Merchant/Provider, in total up to the "Amount Financed" set forth on the first page of this Agreement, during the purchasing window time period specified on your Shopping Pass, which is incorporated here by reference. You agree that each time you make a purchase of goods or services from Merchant/Provider, you are authorizing us to extend credit to you and to pay Merchant/Provider directly on your behalf. At the end of the purchasing window, you will no longer be permitted to make new purchases. You agree not to make purchases in excess of the Amount Financed shown above, but if you do, you agree that we may, in our sole discretion, increase the Amount Financed to include such excess amount in a Summary of Account at Conversion that reflects such increased Amount Financed and resulting increased Finance Charge and Total of Payments. The dated electronic record of such excess purchase(s) will evidence your acceptance of any such increased terms. We will total the purchases you made during the purchasing window and provide you with an updated Summary of Account at Conversion that will show (based on actual total purchases) the final Amount Financed, Finance Charge, Total of Payments and remaining payment schedule for your Installment Loan. Unless required to make minimum payments during your purchasing window, you will be obligated to begin making payments in the amounts and on the dates shown on your updated Summary of Account at Conversion, although you may make greater payments at any time without penalty. You agree that, except for the updated amounts, if any, shown on your updated Summary of Account at Conversion, including any adjustments in scheduled payments to reflect your final Amount Financed and Finance Charges due, all other terms and disclosures of this Agreement will remain in full force and effect.

2. Promise to Pay. For value received, you agree to pay us (a) the full Amount Financed shown on the front page of this Agreement, as the same may be adjusted in accordance with this Agreement, which is called the "principal balance," plus (b) periodic interest at a non-promotional annual rate of 5.99 % on the unpaid principal balance outstanding at the opening of the account and, thereafter, at the beginning of each billing cycle until the loan is paid (using a monthly rate), plus (c) a prepaid finance charge of $39, as applicable, plus (d) any applicable taxes or charges. The actual amount of interest that you pay may exceed the Finance Charge disclosed in the Truth in Lending Disclosure if you make payments later than their scheduled dates or in less than the scheduled amount. If you do not make required payments during the Promotional Payment Period, then, (i) any promotional rate may expire, (ii) interest may thereafter accrue and be charged to you at the non-promotional rate above, (iii) your purchasing window may close, and (iv) no new purchases may be permitted.

3. Timing and Application of Payments. You agree to make payments in accordance with the payment schedule contained in the Truth in Lending Disclosure on the preceding page (or any updated disclosure). Once the initial payment due date is set, the payment due date will be the same day each month. Subject to applicable law, we may apply payments to the amounts you owe under this Agreement in any order we choose. You may not tell us how to apply payments.

4. Payment Method and Address. Unless automatic payments are authorized in connection with this loan, you will make payments by mailing a check or money order to PO Box 530584, Atlanta, GA 30353-0584, by making a phone payment by dialing 1-855-809-1889 or Internet payment at www.greenskycredit.com (click "Make a Payment"). You agree not to send us partial payments marked "paid in full," "without recourse," or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement. All written communications concerning disputed amounts, including any check or other payment instrument that (i) is postdated and accompanied by adequate notice, (ii) indicates that the payment constitutes "payment in full" of the amount owed, (iii) is tendered with other conditions or limitations or (iv) is otherwise tendered as full satisfaction of a disputed amount, must be marked for special handling and mailed or delivered to us at PO Box 29429, Atlanta, GA 30359, Attention: Disputes. Any dispute for healthcare services must include a fully completed Authorization to Release Patient Information form, which will be provided to the Provider.

5. Final Payment, Late Charge and Returned Check Charge. A loan which has unpaid principal, interest, late charges, returned payment charges or any other fees or charges at the end of the term will not be regarded as "paid in full."

6. Card. We will provide you with a Shopping Pass and/or Purchasing Card which you may use to make purchases of goods or services from Merchant/Provider for a limited time. Use of your Pass, Card or Loan to make a purchase constitutes your acceptance of the terms of this Agreement. You agree to notify us immediately if your card is lost, stolen or otherwise compromised.

7. Returned Payment Charge. Subject to applicable law, we may charge you a Return Payment Charge as provided herein. If your lender is located in Connecticut, Illinois, Georgia, Nebraska, New Jersey, New York, or Virginia, and your payment is dishonored or returned for any reason, you agree to pay us a Returned Payment Charge of $20. If your lender is located in Iowa and

your payment by check is dishonored or returned for any reason, you agree to pay us a Returned Payment Charge of $20. If your lender is located in Alabama and your payment is dishonored or returned for any reason, you agree to pay us a Returned Payment Charge of $15. If your lender is located in Kansas, there is no Returned Payment Charge. In all cases, we may charge this fee the first time any payment is returned even if it is paid upon resubmission.

8. Late Charge.

If payment is more than 10 days late, you will be charged the lesser of $39 ($15 in Iowa) or 5% of the payment amount past due.

9. Default. Subject to applicable law, you will be in default if any of the following events occur: (i) you have made any false or misleading statement(s) in your application for the loan subject to this Agreement or any other account that you may have with us; (ii) you fail to make a payment within 60 days of when it was due under this Agreement or any other account agreement that you may have with us. (iii) you fail to comply fully with any term or condition of this Agreement or any other account agreement that you may have with us. (iv) you file or someone else files against you a petition in bankruptcy; (v) you die.

10. Remedies on Default. If you are in default, we will have all of the rights and remedies available to us at law or in equity, in addition to the specific rights and remedies set forth in this Agreement. We may exercise any, some or all of our rights and remedies, in our sole discretion. If you are in default, we may, at our option, require you to pay immediately the entire amount you owe us under this Agreement, in full. Subject to the requirements of applicable law, we may do this without giving you any advance notice of presentment, acceleration, or our intent to accelerate. Unless prohibited by applicable law, you agree to pay our reasonable costs and attorneys' fees related to the collection of your loan.

11. Credit Inquiries and Loan Information. You authorize us to obtain a credit report on you for any legal purpose in connection with this loan, including any update, extension of credit, review, or collection of this loan. If you request, we will tell you whether any credit report was requested, and if so, the name and address of the credit bureau furnishing the report.

12. Inaccurate Information. If you believe that we have information about you that is inaccurate or that we have reported or may report inaccurate information about you to a credit bureau, please notify us of the specific information that you believe is inaccurate by writing to us at PO Box 29429, Atlanta, GA 30359, Attention: Disputes. In doing so, please identify the inaccurate information and tell us why you believe it is incorrect. If you have a copy of the credit report that includes the inaccurate information, please send a copy of that report to us as well.

13. Negative Information Reporting. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

14. Severability. If applicable law is finally interpreted so that charges collected or to be collected in connection with this Agreement exceed the permitted limits, then (i) any such charges will be reduced to the permitted amounts and (ii) any amounts already collected that exceed the permitted amounts will be credited to you by, at our option, applying the credit to any amounts due hereunder or making a direct payment to you. If any provision in this Agreement is invalid under applicable law, the remainder of the provisions in this Agreement will remain in effect.

15. Assignment. This Agreement may be sold at our discretion.

16. Governing Law. This Agreement, including the rate of interest and fees, is governed by applicable federal law and, to the extent not preempted by federal law, the laws of the State where the Lender is located as shown on the front of this document (without regard to the State's conflicts of law provisions). If Lender is located in Kansas, the Kansas Consumer Credit Code (Kan. Stat. Ann. §§ 16a-1-101, et seq.) governs this Agreement.

17. Joint and Several Liability. Each Borrower signing this Agreement will be liable individually and together for all obligations under this Agreement, including payment to us of the entire amount owed under this Agreement

18. No Waiver by Us. We will not be deemed to have waived any of our rights by delaying the enforcement of any of our rights. If we waive any of our rights in writing on one occasion, that waiver does not constitute a waiver by us of our rights on any future occasion.

19. Telephone Monitoring and Recording. You agree that we may monitor and/or record phone calls to ensure that you receive quality service and for training purposes

20. Communicating With You; Consent to Contact by Electronic and Other Means. You agree that, to the greatest extent not prohibited by applicable law, we may contact you as provided in this paragraph. We may contact you for any lawful reason, including for the collection of amounts owed to us. No such contact will be deemed unsolicited. You consent to us (and any other owner or servicer of your account) contacting you about your account. We may contact us at such addresses or numbers (including wireless cellular

Attachment6

may provide to us from time to time. We may use any means of communication, including, but not limited to, postal mail, electronic mail, telephone or other technology, to reach you. You agree that we may use automatic dialing and announcing devices which may play recorded messages. We may also send text messages to your telephone. You may contact us at any time to ask that we not contact you using any one or more methods or technologies.

21. Notices; Change of Address, Employment or Telephone Number. We will send all written notices and statements to your address as it appears on our records. To avoid delays and missed payments that could affect your credit standing, you agree to advise us promptly if you change your mailing address, place of employment telephone number or other contact information, including, but not limited to, porting a landline telephone number to a cellular phone, VoIP or other services. You represent and agree that 'or purposes of imposing fees and charges, you are deemed to reside at the mailing address that we have on record for you.

22. Entire Agreement. This Agreement constitutes the final written expression of the credit agreement between you and us relating to your Loan. We are not bound by any oral representations made or implied that are not directly reflected in this Agreement. A credit agreement must be in writing to be enforceable. Oral agreements or commitments to loan money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend or renew such debt, are not enforceable. To protect you and us from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

23. NOTICES: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Your Merchant/Provider pays transaction fees as a result of your use of the Shopping Pass or Loan. Your Merchant/Provider is prohibited from surcharging you to cover the cost of these transaction fees.

Notice to California Residents (AVISO PARA LOS QUE RESIDEN ENCALIFOR- NIA): SI SU PRÉSTAMO FUÉ NEGOCIADO PRIMERAMENTE EN ESPAÑOL, ESTAMOS OBLIGADOS A PRESENTARLE UNA TRADUCCIÓN EN ESPAÑOL DE LAS DISPOSICIONES REQUERIDAS POR LA REGULACIÓN FEDERAL Z,12 C.F.R. APARTADO 1026.

Notice to Iowa Residents: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. BORROWER MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

Notice to NH Residents: This Agreement provides for reasonable attorneys' fees to be awarded to us in an action against you involving this Agreement. Reasonable attorneys' fees will be awarded to you if you prevail in any action, suit or proceeding brought by us; or an action brought by you. If you successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by us the court may withhold from us the entire amount or such portion of the attorneys' fees as the court considers equitable.

Notice to New Jersey Residents: Because certain provisions of this Agreement are subject to applicable laws, they may be void, unenforceable or inapplicable in some jurisdictions. None of these provisions, however, is void, unenforceable or inapplicable in New Jersey.

Notice to New York Residents: NOTICE TO THE BUYER: 1. Do not sign this credit agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this credit agreement

Notice to Ohio Residents: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio civil rights commission administers compliance with this law.

Notice to Vermont Residents: Lender is engaged in loan production EACH BORROWER SHOULD RETAIN A COPY FOR THEIR RECORDS.

24. SECURITY AGREEMENT. Except as prohibited by state law, if your Installment Loan is made for the purchase of a Solar System, as defined herein, this paragraph applies A "Solar System" is defined as any system designed to collect sunlight and convert it into electricity and may include, but shall not be limited to, the following components: photovoltaic (PV) panels, DC-to-AC inverters, tracking hardware, disconnect switches, and utility power meters (if financed by the Installment Loan) To secure all of your obligations to us under this Agreement, you grant us a security interest in the following assets, in each case whether now owned or hereafter acquired. (a) the Solar System purchased using your Installment Loan described in this Agreement;

(b) any and all rights and remedies under any warranty or warranties covering or relating to the Solar System, and (c) any proceeds (including, but not limited to, money from insurance, sale, or other events) arising from or relating to the Solar System. To the extent applicable, the foregoing security interest shall constitute a purchase money security interest. By accepting this Agreement and using your Installment Loan, you authorize us (x) to disburse funds to the Merchant/Provider for the purpose of financing your purchase of Solar System and to pay the Merchant/Provider some or all of the purchase price of the Solar System; and (y) to sign, file, and record one or more financing statements or any other documents we deem necessary and/or appropriate to perfect or otherwise protect our security interest in the Solar System. You and we agree (i) that the Solar System, and all parts and attachments, shall remain movable "personal property" notwithstanding the installation or annexation of the same to your residential property and regardless of whether we choose to file fixture filings to protect our security interest in the Solar System; (ii) that the Solar System is not intended to be permanently or semi-permanently attached to or incorporated into your residential real property or any other real property; and (iii) it is the mutual intention of the parties to this Agreement regardless of how the Solar System may be characterized by any administrative, judicial, or third-party proceeding or determination, that we shall have a first and senior security interest in the Solar System, but we do not claim any lien on or interest in the real property at the location of the Solar System or any other real property or any other property you use as a residence. If you sell your home, you may move the Solar System to your new home, so long as you advise us in advance of your move in writing, and you have the Solar System installed on your new home in conformity with all applicable warranty requirements within thirty (30) days following commencement of your move.

To the extent that, notwithstanding our express intent, the Solar System or any portion thereof is determined by any governmental authority to constitute a fixture or an interest in any residential real property, and as a result of such determination we, or anyone acting on our behalf, would be deemed to constitute a mortgage broker or mortgage lender under applicable law, then the Solar System or such portion thereof, as applicable, shall be excluded from the security interest arising pursuant to this section. You agree that we disclaim any mechanic's, materialman's or similar lien to which we might otherwise be entitled by operation of law on or relating to (1) your real property at the location of the Solar System or other real property or any other property you use as a residence, and (2) any other property or collateral other than the Solar System itself. You agree to maintain adequate insurance to cover replacement of the Solar System and related services. You agree to add the Lender as an additional insured and loss payee on any insurance policy covering the Solar System  If the address at which the Solar System is installed is different from the primary applicant's address on your loan application, you agree to promptly notify us by mail at PO Box 29429, Atlanta, GA 30359, or by phone at 855-809-1889.

GREP_AGMT_20180301_SR-90678 © SLM Concolidation, LLC. All rights reserved. Rev. 3/18

Rev. December 2015

| **F A C T S** | **WHAT DOES BRAND DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and income<br>• account balances and payment history<br>• credit history and credit scores |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Brand chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Brand share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | Yes |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | No | We don't share |

| **To limit our sharing** | ■ Call 770.963.9224-our menu will prompt you through your choices; or<br><br>■ Call Toll Free 877.778.2710<br><br>**Please note:**<br><br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| **Questions?** | Call 770.963.9224 or Toll Free 877.778.2710 |

**Page 2**

| Who we are | |
|---|---|
| **Who is providing this notice?** | The Brand Banking Company<br>Brand Mortgage Group, LLC |

| What we do | |
|---|---|
| **How does Brand protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We restrict access to your information to those who have a legitimate business purpose, and we train employees on data security and confidentiality. |
| **How does Brand collect my personal information?** | We collect your personal information, for example, when you<br><ul><li>open an account or deposit money</li><li>apply for a loan or give us your income information</li><li>use your credit or debit card</li></ul>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><ul><li>sharing for affiliates' everyday business purposes—information about your creditworthiness</li><li>affiliates from using your information to market to you</li><li>sharing for nonaffiliates to market to you</li></ul>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><ul><li>*Our affiliates include financial companies such as Brand Mortgage Group, LLC, a wholly-owned subsidiary of The Brand Banking Company.*</li></ul> |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><ul><li>*Brand does not share with nonaffiliates so they can market to you.*</li></ul> |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><ul><li>*Brand doesn't jointly market.*</li></ul> |

Attachment A

BRAND BANK

**Your Credit Score and the Price You Pay for Credit**

| Your Credit Score | |
|---|---|
| **Your credit score:** | [redacted] |
| | Source: Experian          Date: 06/15/2016 |

| Understanding Your Credit Score | |
|---|---|
| **What you should know about credit scores:** | Your credit score is a number that reflects the information in your credit report |
| | Your credit report is a record of your credit history  It includes information about whether you pay your bills on time and how much you owe to creditors |
| | Your credit score can change, depending on how your credit history changes |
| **How we use your credit score** | Your credit score can affect whether you can get a loan and how much you will have to pay |
| **The range of scores:** | Scores range from a low of 300 to a high of 850 |
| | Generally, the higher your score, the more likely you are to be offered better credit terms |
| **How your score compares to the scores of other consumers:** | Your credit score ranks higher than [redacted] of U S  consumers |

44659

Borrower:  Arturo Madriz

| Checking Your Credit Report | |
|---|---|
| **What if there are mistakes in your credit report?** | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency<br><br>It is a good idea to check your credit report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your credit report?** | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year<br><br>To order your free annual credit report—<br><br>*By telephone:*  Call toll-free: 1-877-322-8228<br><br>*On the web:*  Visit www.annualcreditreport.com<br><br>*By mail:*  Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's web site at www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to:<br><br>Annual Credit Report Request Service<br>P O Box 105281<br>Atlanta, GA 30348-5281 |
| **How can you get more information?** | For more information about credit reports and your rights under Federal law, visit the Consumer Financial Protection Bureau's web site at www.consumerfinance.gov/learnmore |

# EXHIBIT D





**Congratulations, Arturo !**
**Your application has been approved for $ 21,500.00 !**
**You can start purchasing today by presenting this page and a photo ID to your Merchant/Provider.**

**About Your Account:**

1. When you are ready to make your purchase, give your Account Number and Expiration Date to your Merchant/Provider along with your photo ID. **Please be aware that if you authorize an initial advance under your GreenSky® Installment Loan to pay any initial payment required by the Merchant/Provider, payments may become due under your GreenSky® Installment Loan prior to the completion of services by the Merchant/Provider.**

2. You have  6  months to use your credit limit of $ 21,500.00  All purchases must be made by  12/12/2016

3. By providing your account number to your Merchant/Provider you are authorizing payment for the goods and/or services that you are purchasing. Only provide your account number to your Merchant/Provider when you are prepared to pay. Only those named on this Shopping Pass are authorized to make purchases. Do not give this Shopping Pass to any person not named on this Shopping Pass. If this Shopping Pass is lost or stolen, please notify us immediately at 866-936-0602 ·

4. After your first purchase, you will receive monthly statements during your promotional period to track your transactions. **When you use your GreenSky® Installment Loan, you have zero liability for transactions that you do not authorize‡.** Please monitor your statements carefully and contact us at 866-936-0602 to notify us of any unauthorized activity.

5. You will have no obligation under this loan unless you authorize a transaction.

**Plan 3215. 240 payments. Beginning with 1st transaction, 12 month promo period with no payments required followed by 240 amortized payments based on the balance at the end of promo. Interest charged to account is waived if entire purchase balance is paid before the end of promo period. No prepayment penalty. Your APR is fixed at 5.99% for the life of the loan.**

**Thank you for choosing GreenSky®!**

866-936-0602                    service@greenskycredit.com                    www.GreenSkyCredit.com

Use of this Shopping Pass or the associated Installment Loan by (any) Borrower (or any authorized user) to make a purchase constitutes acceptance by (all) Borrower(s) of the terms of the accompanying Installment Loan Agreement. The physical or electronic record of any such purchase will constitute the signature of (all) Borrower(s) on such Loan Agreement.

Provide your account number to authorize a transaction only after you are satisfied that you have received the goods and/or services that you are receiving. Your Lender does not monitor the workmanship, quality, or completeness of the goods and/or services that you purchase. Contact your Merchant/Provider immediately if not completely satisfied. During your promotional period, you will receive monthly statements to track your loan transactions. You have 60 days after any transaction date to file a dispute.

**FOR CUSTOMER PROTECTION, IDENTIFICATION WILL BE REQUIRED FOR ALL PURCHASES.**

*Eligible only for purchases with your Merchant/Provider. **Your Lender is specified on your Loan Agreement.**
‡Standard MasterCard rules apply. Any unauthorized transactions must be reported to GreenSky® within 60 days.

Application ID: ██████512

Examples of required minimum monthly payments for different total purchase amounts appear below:

| Total Amount of Purchases | Monthly Payment Amount |
| --- | --- |
| 4,000.00 | 29.63 |
| 5,000.00 | 37.04 |
| 10,000.00 | 74.08 |
| 15,000.00 | 111.12 |
| 20,000.00 | 148.16 |
| 21,500.00 | 159.28 |

© 2015 GreenSky Trade Credit, LLC. All rights reserved. Rev 01/15

# EXHIBIT E



PO Box 29429
Atlanta, GA 30359

ARTURO MADRIZ



Past Due Notice

10/12/2017

Account Number Ending in: ▉▉▉▉▉
Total Balance: $17,610.32
Past Due Amount: $360.78
Amount Due by 11/06/2017: $481.04
Lender: The Brand Banking Company, Lawrenceville, GA

Dear ARTURO,

Your GreenSky® Program loan is now at least 60+ days past due. We ask that you pay $360.78 now to bring your account current. The Amount Due by 11/06/2017 includes the Past Due Amount and the current month's payment.

You can make a payment online at www.greenskyonline.com, by calling 877-365-3552, or mailing your payment to:

GreenSky® Program
P. O. Box 530584
Atlanta, GA  30353-0584

Please include your payment slip or coupon with your mailed payment or note your account number on your check.

We may report information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You have a right to inspect your credit report with the credit bureaus.

If you have any questions, or would like to notify us of a payment, please contact us toll-free at 877-365-3552 Monday through Thursday 8am-11pm, Friday 8am-5pm, and Saturday 9am-6pm - All Eastern Time.

Sincerely,

The Brand Banking Company, Lawrenceville, GA
GreenSky® Program
877-365-3552

This letter is an attempt to collect a debt, and any information obtained will be used for that purpose.

1606152512

# EXHIBIT F

Jun 21 18 09:18a                                                                    p.1



PO Box 29429
Atlanta, GA 30359



782 1 MB 0.424  T3 MAAD296 PL1 S296
ARTURO MADRIZ



Past Due Notice

06/12/2018

Account Number Ending in:
Total Balance: $17,944.60
Past Due Amount: $240.52
Amount Due by 07/06/2018: $360.78
Lender: Synovus Bank, a Georgia banking company

Dear ARTURO,

Your GreenSky® Program loan with your Lender is now 30+ days past due. We ask that you pay the Past Due Amount of $240.52 now. The Amount Due by 07/06/2018 includes the Past Due Amount and the current month's payment.

You can make a payment online at www.greenskyonline.com, by calling 866-263-5814, or mailing your payment to:

GreenSky® Program
P.O. Box 71215
Charlotte, NC 28272-1215

Please include your payment slip or coupon with your mailed payment or note your account number on your check.

We may report information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You have a right to inspect your credit report with the credit bureaus.

If you have any questions, or would like to notify us of a payment, please contact us toll-free at 866-263-5814 Monday through Thursday 8am-11pm, Friday 8am-5pm, and Saturday 9am-6pm - All Eastern Time.

Sincerely,

Synovus Bank, a Georgia banking company
GreenSky® Program
866-263-5814

This letter is an attempt to collect a debt, and any information obtained will be used for that purpose.

Jun 21 18 09 19a

p. 2

Please send Notice of Statement Errors and Account inquiries to:
GreenSky® PO Box 29429, Atlanta, GA 30359



**GreenSky® Program Loan Account**
Statement for period ending 06/11/2018
Account Number: ▓▓▓▓▓▓▓▓

## Thank you for financing your purchase with Green Nation

### Payment Information

| | |
|---|---|
| New Balance | $17,944.60 |
| Past Due Amount¹ | $240.52 |
| Minimum Payment Due | $120.26 |
| Total Amount Due (to bring your account current) | $360.78 |
| Payment Due Date | 07/06/2018 (before 6:00 pm ET) |

**Purchase window expiration: 12/12/2016**

To view account information, please log on to greenskyonline.com

**Late Payment Warning:** If we do not receive your minimum payment by the Payment Due Date listed above, you may have to pay a late fee of up to the amount authorized by your loan agreement. If your account is in dispute, your New Balance may reflect a temporary credit.
¹Past Due Amount is included in the Total Amount Due.

### Do you have questions about your account?

We are available to assist every Monday-Saturday from 6 AM-1 AM and/or Sunday from 8 AM-1 AM, Eastern Time.

| | |
|---|---|
| Toll-Free Customer Service | 855-809-1889 |
| Your Support Team | service@greenskycredit.com |

### Summary of Account Activity

| | |
|---|---|
| Beginning Balance | $17,858.03 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Fees Charged | $6.00 |
| Interest Charged | $80.57 |
| New Balance | $17,944.60 |
| | |
| Credit Limit | $21,500.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 06/11/2018 |
| Days in Billing Cycle | 31 |
| Annual Percentage Rate | 5.99% |

The Servicemembers Civil Relief Act (SCRA) provides important financial and legal protections to servicemembers, including caps on interest rates and stays of certain legal proceedings. Learn more online at www.militaryonesource.mil (search for "SCRA").

---

**When you use your GreenSky® Installment Loan, you have zero liability for transactions that you do not authorize***
**Log on to greenskyonline.com today to manage your account - it's fast, secure and easy.**

*Applicable payment card network rules apply. Any unauthorized transactions must be reported to GreenSky within 60 days.

### TRANSACTIONS

| Reference Number | Transaction Date | Post Date | Description | Amount |
|---|---|---|---|---|
| **PAYMENTS AND CREDITS¹** | | | | |
| *PURCHASES* | | | | |
| **FEES** | | | | |
| GS43161 | 05/17/2018 | 05/17/2018 | Late Payment Fee | $6.00 |
| | | | TOTAL FEES FOR THIS STATEMENT | $6.00 |
| **INTEREST CHARGED** | | | | |
| GS58352 | 06/11/2018 | 06/11/2018 | FINANCE CHARGE | $80.57 |
| | | | TOTAL INTEREST CHARGED FOR THIS STATEMENT | $80.57 |

---

Your Lender is Synovus Bank, a Georgia banking company.
A payment in accordance with this Statement is a payment to your Lender.

²If your account is in dispute, your statement may reflect a temporary credit until your dispute is resolved.
This statement is continued on the reverse side.

Page 1 of 1

Please detach at the dotted line and return the bottom portion with your payment. Please do not include any other correspondence with your payment.

Account Number ▓▓▓▓▓▓▓▓

Please include it is number on your check. If making payment to your lender by check, please make check payable to: The GreenSky Program

PO BOX 29429 | ATLANTA, GA 30359

| | |
|---|---|
| Payment Due Date | 07/06/2018 |
| Current Balance | $17,944.60 |
| Past Due Amount² | $240.52 |
| Minimum Payment Due | $120.26 |
| Total Amount Due | $360.78 |

²Past Due Amount is included in the Total Amount Due

Are you enrolled in automatic payments? Log on to greenskyonline.com to review your account information, view your electronic statement, schedule payments and more!

**Amount Enclosed $**

Any additional payment above your Total Amount Due will be applied towards your New Balance. This additional payment will not reduce or eliminate your next regularly scheduled payment.

GREENSKY®
PO BOX 71215
CHARLOTTE NC 28272-1215



8577 1 AB 0.408  *249 AADC936 P..5 S296
ARTURO MADRIZ

0005 00000021 5492693237918186 00 07062018000360780002405⬛b

<u>PROOF OF SERVICE</u>

**Re:**   *Madriz v. Green Nation Direct, et al.*
**Los Angeles County Superior Court Case No. BC723006**

I, Sean R. Barry, certify that I am not a party to the proceeding herein, that I am and was at the time of service over the age of 18 years old, and a resident of the State of California. My business address is 445 Bush Street, San Francisco, California 94108.

On January 16, 2019, I served the following:

**FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE AND DECLARATORY RELIEF, FOR:**

**(1)**   **THE HOME SOLICITATION SALES ACT, CIVIL CODE §1689.5, *ET SEQ.*;**
**(2)**   **THE CALIFORNIA TRANSLATION ACT, CIVIL CODE §1632;**
**(3)**   **VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CIVIL CODE §1788, *ET SEQ.*; AND**
**(4)**   **BUSINESS & PROFESSIONS CODE §17200, *ET SEQ.***

by depositing true copies thereof, enclosed in separate, sealed envelopes, each of which was addressed respectively to the person(s) and address(es) shown below, for collection and processing for mailing following this business' ordinary practice with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with the postage thereon fully prepaid, in the United States mail at San Francisco, California.

**Keith J. Barnett**
**TROUTMAN SANDERS**
**600 Peachtree St., NE, Ste. 3000**
**Atlanta, GA 30308**
**Attorneys for Defendants GREENSKY OF GEORGIA, LLC, THE BRAND BANKING COMPANY and SYNOVUS BANK (no appearances)**

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 16, 2019

_____
Sean R. Barry